Jaloneck, Appellant, *v.* Jarecki Manufacturing Co. et al.

Argued April 9, 1945. Before BALDRIGE, P. J., RHODES, RENO, DITHRICH, ROSS and ARNOLD, JJ. (HIRT, J., absent.)

*Burton R. Laub*, with him *Gerald A. McNelis*, for appellant.

*A. Grant Walker,* with him *Gunnison, Fish, Gifford & Chapin,* and *John W. Himebaugh,* for Jarecki Manufacturing Company, appellee.

OPINION BY RHODES, J., July 19, 1945:

This is a workman's compensation case under the Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, No. 284, 77 PS § 1201 et seq. The claim petition sets forth that claimant's husband died on June 1, 1942,[1] as the primary result of silicosis,[2] and that he had been employed by defendant in an occupation having a silica hazard. Defendant, in its answer, denied that deceased's death was the primary result of silicosis, and averred that while employed by defendant deceased was not exposed to a silica hazard. The referee found that deceased died as a result of tuberculosis and silicosis on June 1, 1942, that he was not employed in an occupation having a silica hazard for at least two years in the aggregate during the eight years next preceding his disability on May 29, 1942, that he had been employed by defendant from May 25, 1934, to May 29, 1942, that there was no silica hazard at defendant's plant in the employment in which deceased was engaged; and the claim for compensation was disallowed. The Workmen's Compensation Board affirmed the referee's findings of fact, conclusions of law, and order of disallowance. The court below affirmed the board and dismissed claimant's appeal.

Claimant has appealed to this court.

The Workmen's Compensation Board is the ultimate fact-finding body under the Pennsylvania Occupational Disease Act of 1939, §§ 418, 423, 427,[3] 77 PS §§ 1518,

---

[1] See *Jones v. Philadelphia & Reading Coal & Iron Co. et al.,* 154 Pa. Superior Ct. 465, 468, 36 A. 2d 252.

[2] See Act of June 21, 1939, P. L. 566, No. 284, §§ 108 (k), 301 (e), 77 PS §§ 1208 (k), 1401 (e) ; *Stauffer v. Hubley Mfg. Co. et al.,* 151 Pa. Superior Ct. 322, 30 A. 2d 370.

[3] Amended by the Act of May 27, 1943, P. L. 743, § 1.

1523, 1527, as it is under the Workmen's Compensation Act of 1915, as reënacted and amended, 77 PS § 1 et seq. *Plaugher v. American Viscose Corp.*, 147 Pa. Superior Ct. 372, 380, 24 A. 2d 698. The burden was on claimant to satisfactorily present to the board the necessary elements to support an award; and we repeat what we have often said that the credibility of the witnesses and the weight of their testimony are for the referee and the board. *Schuch v. Harbison's Dairies, Inc., et al.*, 150 Pa. Superior Ct. 582, 586, 29 A. 2d 216. Thus the burden was on claimant to prove to the satisfaction of the board that deceased's death was caused solely by silicosis, either alone or accompanied by active pulmonary tuberculosis; that deceased had an aggregate employment of at least four years in this Commonwealth, during a period of eight years next preceding his death, in an occupation having a silica hazard; and that defendant was the last employer in whose employment deceased was exposed to such hazard. *Metz v. Quakertown Stove Works et al.*, 156 Pa. Superior Ct. 70, 39 A. 2d 534; section 301(d), (e), Act of June 21, 1939, P. L. 566, 77 PS § 1401(d), (e).

Deceased had been employed in various capacities by defendant at its foundry in Erie, Pa., since May 25, 1934. Previously he had been employed by another foundry in its cleaning department for fifteen years prior to his employment by defendant. Claimant's witnesses who worked with deceased at defendant's plant testified that the plant was well lighted and well ventilated, that conditions had been the same since 1937, and that deceased did general work in the foundry, and seldom helped with any operation where it was necessary to come into contact with dust, and then not over fifteen minutes every two days for a relatively short time during his employment. One of the witnesses had been working in defendant's plant for twenty-five years doing the same kind of work as deceased had done for several years and had never felt any ill effects. During the latter months of de-

ceased's employment he worked in a shipping room. For two years prior to the last assignment his duties involved the carrying of flasks. One of the witnesses testified he noticed that deceased had a cough and was short of breath shortly after he came to defendant's plant in 1934. There was testimony to the effect that the atmospheric conditions at the plant where deceased had been employed were bad during the first eight or ten years, but that improvements in ventilation and dust control served to improve conditions during the latter years of deceased's employment with that company.

Dr. Ralph D. Bacon, a physician called by claimant, testified that he saw deceased and made an X-ray and fluoroscopic examination of him on July 21, 1941, and that he found evidence of organic heart disease and an extensive pleural and lung disease due in part to tuberculosis and in part to silicosis. This witness also testified that he thought the cause of deceased's death was tuberculosis, but as he did not see him after July, 1941, he could not give a definite opinion as to the cause of death; that the silicosis may have been of long standing. His testimony contained the following: "Q. You can't say that his death was caused solely by silicosis as definitely distinguished from a contributory or accelerating cause? A. I certainly could not." In commenting upon the testimony of this witness, the board said: "The contributory part played by a silicosis condition or the relationship of such condition with the decedent's employment with the defendant, was left in a highly conjectural state."

Dr. R. S. Anderson, a specialist in pulmonary diseases, who testified for claimant, based his testimony entirely on the X-ray film shown to him and made by Dr. Bacon in July, 1941. He assumed that "silico-tuberculosis" was the cause of deceased's death. But he could not tell from an examination of the film alone whether deceased had silicosis.

On behalf of defendant, Merril Eisenbud, who had been engaged for seven years with the evaluation and

control of occupational disease hazards, testified that he made two surveys at defendant's plant, the first in September, 1941, dealing with the particular working conditions in which deceased worked, and the second in June, 1942, a complete survey. The witness personally visited the plant and made separate dust counts at the place where deceased had worked and was working, and took numerous samples of the air in the breathing zone of an employee preparing cylinder molds. The average total count was 1,600,000 dust particles per cubic foot. In the breathing zone of an employee molding cylinder heads the average was 2,500,000 dust particles per cubic foot. At other locations away from molding operations the average was 1,000,000 dust particles per cubic foot. The witness described the standards used by him and found that there was no silica hazard present on the basis of the authoritative data used to measure such exposures. He testified that the recognized allowable dust particles per cubic foot were 30,000,000, and that 5,-000,000 free silica particles per cubic foot were the allowable amount fixed by the United States Public Health Survey. Of the samples of dust particles taken by him in defendant's plant he said the maximum free silica content was 300,000 particles per cubic foot.

Defendant's witness William Jenkins testified that he was deceased's immediate superior at the foundry; that the conditions as to ventilation and dust had remained the same since 1934; that he had been employed by defendant for twenty-one years; that the tests made by Eisenbud were typical of the general air conditions in the plant; that deceased had spent about sixty per cent of his working time in the open air; that deceased had been engaged in "shaking out castings" only three hours a week, and had done this work for one and a half years out of the eight years he had been employed by defendant.

Claimant first complains that the testimony of Eisenbud was incompetent, and that there was no other

competent evidence to support the board's findings; and secondly that the court below erred in failing to give effect to the presumption in claimant's favor established by section 301(f) of the Act of June 21, 1939, P. L. 566, 77 PS § 1401(f).

Claimant obviously overlooks what we have frequently said in compensation cases where the decision of the board is against the claimant who has the burden of proof.

In *Walsh v. Penn Anthracite Mining Co.*, 147 Pa. Superior Ct. 328, at page 333, 24 A. 2d 51, at page 53, the late President Judge KELLER, speaking for this court said: "Where the decision of the board is against the party having the burden of proof—in this case, the claimant—bearing in mind that a trier of fact is not required to accept even uncontradicted testimony as true (*District of Columbia's Appeal*, 343 Pa. 65, 79, 21 A. 2d 883, 890) the question before the court is whether the board's findings of fact are consistent with each other and with its conclusions of law and its order, and can be sustained without a capricious disregard of the competent evidence. Unless the answer is in the negative, the order must be affirmed." See, also, *Schuch v. Harbison's Dairies, Inc., et al.*, supra, 150 Pa. Superior Ct. 582, 586, 29 A. 2d 216; *Pryor v. Swcet's Steel Co.*, 151 Pa. Superior Ct. 99, 101, 29 A. 2d 434; *Baston v. Stoehr & Fister*, 151 Pa. Superior Ct. 618, 623, 30 A. 2d 640; *Hudek v. United Engineering & Foundry Co. et al.*, 152 Pa. Superior Ct. 493, 498, 33 A. 2d 41; *McGurty v. Ruskin Dining Room et al.*, 153 Pa. Superior Ct. 535, 537, 34 A. 2d 374; *Roland v. Frantz et al.*, 156 Pa. Superior Ct. 640, 643, 41 A. 2d 423. Where the board refuses compensation to a claimant, a considerable burden is placed upon such claimant seeking to set aside the findings of fact on appeal. The reasons for this are clear. The board is not required to award compensation even where the defendant has presented no evidence; it could conclude that claimant has not met the burden of proof, or that his witnesses are not credible, and are not worthy of belief even though

uncontradicted. As said in *Seitzinger v. Fort Pitt Brewing Co.*, 294 Pa. 253, at page 258, 144 A. 79, at page 80, the burden of proof being upon the claimant, "if the evidence to sustain that burden is not believed by the board, it may decline to grant an award thereon, or if, in the opinion of the board, such evidence is so indefinite and inconsistent that it cannot be accepted as a basis for a finding which would sustain an award, no compensation need be given." In the present case the board stated that it was "of the opinion that the part played by silicosis in bringing about the death of the decedent is, under the evidence, largely conjectural and inconclusive. . . ."

The board's appraisal of the testimony obviated a finding that the death of deceased was caused solely by silicosis, either alone or accompanied by active pulmonary tuberculosis. Section 301 (e) of the Act of June 21, 1939, P. L. 566, 77 PS § 1401 (e).

It was necessary that claimant establish to the satisfaction of the board not only this fact but the other facts enumerated in the act—essential elements of her case. But both the referee and the board found that deceased was not subjected to any silica hazard at defendant's plant, and thus the claimant, in their judgment, had not met the burden of proof in this respect. Section 301 (d) of the Act of June 21, 1939, P.L. 566, 77 PS §1401 (d). We find no inconsistencies in the findings of fact of the compensation authorities and the conclusions of law are consistent with the findings of fact. They can be sustained without any capricious disregard of competent evidence, and no relevant argument is presented to the contrary. The testimony of claimant's own witnesses is compatible with the findings and the order of disallowance.

Claimant's objection to the testimony of Eisenbud was not made until the conclusion of his testimony, and then the objection only related to the qualifications of the witness, and that it should be restricted to the days upon which he had made the tests. We think Eisenbud's

testimony as to the tests he himself actually made and the facts and conditions he personally observed at defendant's plant is clearly admissible. It seems that claimant's objection to this witness' testimony was to its weight rather than to its competency. The opinion of an expert may be rendered solely upon the basis of facts personally observed by him or on personal observation combined with the assumed facts appearing in the evidence. *Jackson et ux. v. United States Pipe Line Co.*, 325 Pa. 436, 440, 191 A. 165. In *Phillips v. Unemployment Compensation Board of Review*, 152 Pa. Superior Ct. 75, 82, 30 A. 2d 718, we said that what an investigator himself has observed, bearing on the issue, may become competent proof if the opportunity for cross-examination is afforded. Eisenbud was cross-examined in much detail. There was no objection to or contradiction of the testimony of William Jenkins to the effect that the conditions in defendant's plant had been the same from 1934 to 1942. With this in the record the testimony of Eisenbud as to what he ascertained and concluded is admissible.

Defendant points out that the action of the referee on claimant's objection to Eisenbud's testimony has not been assigned as error either before the board or the court below, and is not here the subject of a specific assignment of error. In view of our disposition of the matter generally, no comment is necessary on this question of procedure.

Claimant argues that she went before the various tribunals below armed with the presumption that deceased was employed in an industry having a silica hazard and that she implemented that presumption by showing the actual existence of such a hazard. Assuming that it may be said that in an ordinary foundry there is a silica hazard,[4] nevertheless there was affirmative testimony to the effect that deceased had not been exposed to a silica

---

[4] There was no direct testimony that there was a silica hazard in the industry or occupation generally in which deceased was engaged.

hazard in his employment with defendant. *Metz v. Quakertown Stove Works et al.*, supra, 156 Pa. Superior Ct. 70, 74, 75, 39 A. 2d 534. Section 301 (f) of the Act of June 21, 1939, P.L. 566, 77 PS §1401 (f), is as follows: "If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive." The referee and board could very well conclude from the testimony that deceased's employment with defendant did not subject him to a silica hazard, and that his condition did not arise out of such employment. In any event, the presumption only follows after the establishment of the required facts, and whether it has thereafter been rebutted would be a question for the board to determine. See *Paulin v. Williams & Co., Inc., et al.*, 122 Pa. Superior Ct. 462, 468, 186 A. 415, 327 Pa. 579, 195 A. 40.

The board, in commenting upon the existence of a silica hazard in the occupation in which deceased was engaged with defendant, concluded by saying that it had "carefully reviewed and considered all the pertinent evidence and testimony in this case, with particular attention to that bearing upon the atmospheric conditions which existed in the defendant's foundry, which are herein assigned as constituting an occupational hazard. The great weight of this testimony appears to indicate no demonstrable factors which might indicate that the workmen there employed were exposed to the risk of inhaling free silicon in sufficient quantity to endanger their lives or general health."

Finally, even if the testimony of Eisenbud is completely disregarded, which is not necessary, it could not be said that the disallowance of compensation by the board was the result of a capricious disregard of the competent evidence. The evidence as to silicosis was, as

the board said, inconclusive and conjectural; and it was certainly no mandate to the board to find that deceased's disability and death were caused solely by silicosis, or solely by silicosis accompanied by active pulmonary tuberculosis, as definitely distinguished from a contributory or accelerating cause. Section 301(e) of the Act of June 21, 1939, P.L. 566, 77 PS §1401 (e). See *Treaster v. North American Refractories Co. et al.,* 156 Pa. Superior Ct. 567, 572, 41 A. 2d 53; *Roschak et ux. v. Vulcan Iron Works,* 157 Pa. Superior Ct. 227, 231, 42 A. 2d 280.

The order of the court below is affirmed.